THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| FRANCISCO TORRES-MORENO,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security, TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement, EVAN TJADEN, in his official capacity as ICE Field Officer Director, NATE BROOKSBY, in his official capacity as the warden of the Purgatory Correctional Facility, TODD BLANCHE, in his official capacity as the United States Attorney General, The Executive Office for Immigration Review United States Immigration and Customs Enforcement.<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; ORDERING RELEASE AND REPORTS**<br><br>Case No. 4:26-cv-00092-DN-PK<br><br>District Judge David Nuffer |

Petitioner Francisco Torres-Moreno ("Mr. Torres-Moreno") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241(a), alleging that he is being unlawfully confined under 8 U.S.C. § 1226(a) in violation of the Constitution and laws of the United States.[1] Mr. Torres-Moreno challenges his August 10, 2026, arrest and subsequent detention by U.S. Immigration and Customs Enforcement ("ICE").[2] Mr. Torres-Moreno is a noncitizen who entered the United States "without inspection in the early 1990s."[3] Mr. Torres-Moreno presently has an approved

[1] Verified Petition for Habeas Corpus and Declaratory Relief ("Petition"), docket no. 1, filed August 12, 2026; *see also* Petitioner's Reply to the Government's Response ("Reply"), 2, 10, docket no. 12, filed August 21, 2026.

[2] Petition at 1–3, 16–17, 24, 31, 35, 48–58; *see generally* Reply.

[3] Petition at 16, ¶ 61.

United States Citizenship and Immigration ("USCIS") Form I-130, Petition for Alien Relative, filed on his behalf by his United States citizen daughter and a pending application for adjustment of status ("Adjustment Application").[4] Mr. Torres-Moreno also argues he is "grandfathered for purposes of adjustment of status under INA § 245(i) based upon an immigrant visa petition filed on his behalf before the statutory deadline."[5]

On August 10, 2026, Mr. Torres-Moreno was arrested and detained by ICE agents in St. George, Utah, at the direction of Active ICE Director Todd Lyons, ICE/ERO Acting Field Office Director Evan Tjaden, Secretary of Homeland Security Markwayne Mullin, and U.S. Attorney General Todd Blanche (collectively, "Respondents").[6] Mr. Torres-Moreno was transported to the ICE Enforcement and Removal Operations office in St. George, for processing and then transferred into the Purgatory Correctional Facility in Hurricane, Utah.[7]

Respondents maintain that the detention and removal of Mr. Torres-Moreno is authorized under 8 U.S.C. § 1226(a) "since the purpose of Mr. Torres's arrest appears to have been prevention of flight risk of a removable alien . . . ."[8] This contradicts the statements provided by the arresting ICE officer, A. McDermott, which provides that the determination was based on Mr. Torres-Moreno's lacking immigration status, or, notwithstanding such status, that he was removable.[9] Respondents never provided any documentation to inform Mr. Torres-Moreno that

[4] Petition at 1, ¶ 1; *see also* Exhibit 1 to Petition, May 23, 2023 Approval Notice, I-130 – Petition for Alien Relative ("2023 USCIS Approval Notice"), docket no. 1-1, filed August 12, 2026.

[5] Petition at 1, ¶ 1; *see also* Exhibit 2 to Petition, January 11, 1995 Approval Notice, I-130 – Immigrant Petition for Relative, Fiance(e), or Orphan, ("1995 USCIS Approval Notice"), docket no. 1-2, filed August 12, 2026.

[6] *See* Petition at 4.

[7] *Id.* at 3, ¶¶ 9–11.

[8] Respondent's Response to Order to Show Cause ("Response"), 8, docket no. 10, filed August 20, 2026.

[9] *Id.* at Exhibit 2, Warrant for Arrest of Alien ("I-200 Warrant"), docket no. 10-2, filed August 20, 2026.

something had changed with his pending application for adjustment of status.[10] Over the years, USCIS also processed and approved both of Mr. Torres-Moreno's I-130 petitions and scheduled him for a biometrics appointment on November 21, 2024.[11] Mr. Torres-Moreno's Application is still pending.[12]

After reviewing the Petition, Response, and Reply, which followed entry of an Order to Show Cause,[13] and for the reasons stated below, Mr. Torres-Moreno's Petition is GRANTED. Mr. Torres-Moreno is ordered released immediately from detention.

**Contents**

1 BACKGROUND ..... 4
2 LEGAL STANDARD ..... 6
3 DISCUSSION ..... 6
3.1 Respondents Have Not Established A "Strong Special Justification" for Detaining Mr. Torres-Moreno ..... 8
3.2 Mr. Torres-Moreno's Liberty Interests Have Been Violated ..... 10
3.2.1 The Private Interest Affected ..... 11
3.2.2 The Risk of Erroneous Deprivation ..... 13
3.2.3 The Government's Interest ..... 13
3.3 Respondents Have No Authority to Continue Detaining Mr. Torres-Moreno ..... 14
4 ORDER ..... 15

[10] *See generally* Reply at 2 ("[H]e had a pending USCIS adjustment application based on an approved immediate-relative petition and his claimed eligibility under INA § 245(i), for which he paid the Form I-485 filing fee and required § 245(i) amount."). Section 245(i) of the INA refers to 8 U.S.C. § 1255. *See* U.S. Citizenship and Immigr. Servs., *Immigration and Nationality Act* (last updated July 10, 2019), https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act.).

[11] 1995 USCIS Approval Notice; *see also* 2024 USCIS Approval Notice; *see also* Petition at Exhibit 6, 2024 I-485 – Application to Register for Permanent Residence or Adjust Status ("USCIS I-485 Application"), docket no. 1-6, filed August 12, 2026.

[12] Petition at 17, ¶¶ 66–69.

[13] Memorandum Decision and Order to Show Cause and Order Staying Transfer During Pendency of Petition ("Order to Show Cause"), docket no. 4, filed August 12, 2026.

## 1 BACKGROUND

Mr. Torres-Moreno was arrested on August 10, 2026, as evidenced by an I-200 Administrative "Warrant for Arrest of Alien," also commonly referred to as an I-200 Warrant.[14] No explanation or background details are given for why or how Mr. Torres-Moreno came to be detained by ICE, just that he was encountered off of Telegraph Street and 930 East in Washington, Utah.[15] ICE agents arrested Mr. Torres-Moreno alleging that he either lacked immigration status or notwithstanding such status is removable, no other justification is provided.[16] The arrest was made despite Mr. Torres-Moreno's pending Adjustment Application, lack of criminal history or gang affiliation, and his having no outstanding warrants.[17]

Mr. Torres-Moreno is a native of Mexico and a noncitizen resident of the United States.[18] Mr. Torres-Moreno entered the United States in the early 1990s and has a United States citizen daughter.[19] Mr. Torres-Moreno attaches to his Petition approval notices that he received in 1995 and 2024 related to his I-130 immigrant petition for relative of status; his USCIS I-485 Application; and the notice of biometrics appointment for his Application at the USCIS Application Support Center in Las Vegas, Nevada.[20] Respondents do not address Mr. Torres-Moreno's Adjustment Application; only that it will be considered in the removal proceedings

---

[14] Response at Exhibit 2, I-200 Warrant.

[15] *See generally* Petition; *see also* Exhibit 1 to Response, Record of Deportable/Inadmissible Alien ("DHS Record"), docket no. 10-1, filed August 20, 2026.

[16] I-200 Warrant.

[17] DHS Record at 2.

[18] Petition at 1, 16, ¶¶ 1, 61.

[19] Reply at 9.

[20] USCIS I-485 Application; 1995 USCIS Approval Notice; 2024 USCIS Approval Notice.

before an immigration judge.[21] This would shift the Adjustment Application from USCIS jurisdiction to removal proceedings before an immigration judge.[22]

For over three decades, Mr. Torres-Moreno has lived freely in this country and has a United States citizen daughter, who has petitioned for adjustment of his status.[23] Mr. Torres-Moreno asserts in his Reply: "He has remained in the United States since that time and, over the course of more than three decades, has built his life in this country, developing substantial family, community, and economic ties. . . . He has no history of violent criminal conduct and no serious criminal convictions suggesting that his physical detention is necessary to protect the community."[24]

Nevertheless, on August 10, 2026, ICE agents arrested Mr. Torres-Moreno.[25] He was not arrested for committing a crime, but simply for his immigration status.[26] Respondents argue Mr. Torres-Moreno's detention is discretionary under 8 U.S.C. § 1226(a).[27] Mr. Torres-Moreno filed his Petition on August 12, 2026, shortly after his detention, alleging four causes of action: (1) Unlawful Detention in Violation of 8 U.S.C. § 1226(a) and the Fifth Amendment, 28 U.S.C. § 2241; (2) Denial of Due Process – Failure to Provide a Neutral and Impartial Decisionmaker, Fifth Amendment and 28 U.S.C. § 2241; (3) Structural Due Process Violation—EOIR Custody

---

[21] Response at 4.

[22] *See id.* at 3.

[23] Reply at 9.

[24] Petition at 16, ¶¶ 61–62.

[25] DHS Record at 1.

[26] I-200 Warrant.

[27] Reply at 1.

Adjudication, Fifth Amendment; and (4) Arbitrary and Capricious Agency Action and Denial of Due Process Relating to Petitioner's Pending Adjustment Application.[28]

Mr. Torres-Moreno remains in removal proceedings, and his Adjustment Application remains pending.[29]

## 2 LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who "is in custody in violation of the Constitution or laws or treaties of the United States."[30] Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."[31] Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention.[32] The individual in custody bears the burden of establishing that detention is unlawful.[33]

## 3 DISCUSSION

The legal questions presented by this case are complex and evolving. As we continue to see, and "[a]s the Ninth Circuit has noted, the INA has been compared to a 'morass,' a 'Gordian

[28] Petition at 52–56.

[29] Response at 4.

[30] 28 U.S.C. § 2241(c)(3).

[31] *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).

[32] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))); *see also Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1217 (10th Cir. 2001) (holding that federal courts retain jurisdiction under 28 U.S.C. § 2241 to review habeas petitions challenging detention under IIRIRA, and IIRIRA does not eliminate this authority.); *see also Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1235 (10th Cir. 2026).

[33] *Tanchez v. Noem*, No. 2:25-cv-1150, 2026 WL 125184, at *4 (D. Utah January 16, 2026).

knot,' and 'King Minos's labyrinth in ancient Crete.'"[34] Courts in this district,[35] this circuit,[36] and across the country[37] have been asked to weigh in on the same or similar factual settings in this area of the law.[38] New decisions are issued almost daily. Eight circuits, including the Tenth Circuit, have considered similar issues,[39]

---

[34] *Maldonado Vazquez v. Feeley,* 805 F. Supp. 3d 1112, 1137 (D. Nev. 2025) (quoting *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020)).

[35] *Tanchez,* 2026 WL 125184 at *10; *Carbajal v. Wimmer*, No. 2:26-cv-00093-TC, 2026 WL 353510 (D. Utah Feb. 9, 2026); *Cisneros v. Noem*, No. 2:25-cv-01170-HCN, 2026 WL 396300 (D. Utah Feb. 12, 2026); *Vasquez v. Noem*, No. 2:25-cv-01146-JNP, 2026 WL 309631 (D. Utah Feb. 5, 2026); *Reyes v. United States Immigr. & Custom Enf't*, No. 2:25-cv-01159-TC, 2026 WL 266952 (D. Utah Feb. 2, 2026); *Velasquez v. Brooksby*, No. 4:26-cv-00018-DN-PK, 2026 WL 592355 (D. Utah Mar. 3, 2026).

[36] *Jose-De-Jose v. Noem*, No. CIV-25-1454-SLP, 2026 WL 360045 (W.D. Okla. Feb. 9, 2026); *Gutierrez v. Garcia*, No. 2:25-cv-001145-WJ-KRS, 2026 WL 310064 (D.N.M. Feb. 5, 2026); *Hernandez v. Baltazar*, No. 1:25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); *Gutierrez Sosa v. Holt*, No. CIV-25-257-PRW, 2026 WL 36344, *3-5 (W.D. Okla. Jan. 6, 2026); *Montoya v. Holt*, No. CIV-235-1231-JD, 2025 WL 3733302, *5-12 (W.D. Okla. Dec. 26, 2025); *Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026 WL 184287 (W.D. Okla. Jan. 23, 2026); *Rafibaev v. Noem*, No. 26-cv-00461-PAB, 2026 WL 607559, *4 (D. Colo. Mar. 4, 2026).

[37] *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, *2 (N.D. Cal. Sept. 12, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025); *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); *Patel v. Crowley*, No. 25-C-11180, 2025 WL 2996787 (N.D. Ill. Oct. 24, 2025); *N-E-M-B v. Wamsley*, No. 3:25-cv-989-SI, 2025 WL 3527111 (D. Or. Dec. 9, 2025); *Faizyan v. Casey*, 2025 WL 3208844, *4-6 (S.D. Cal. Nov. 17, 2025); *Lepe v. Andrews*, 801 F. Supp. 3d 1104, (E.D. Cal. Sept. 23, 2025); *Petion v. Hyde*, No. 2:25-cv-00535-SDN, 2025 WL 3072567 (D. Me. Nov. 3, 2025); *Da Cunha v. Freden*, No. 25-cv-6532-MAV, 2025 WL 3280575 (W.D.N.Y. Nov. 25, 2025); *Huang v. Almodovar*, No. 25 CIV 9346 (DEH), 2025 WL 3295912 (S.D.N.Y. Nov. 26, 2025); *Maldonado v. Cabezas*, No. CV 25-13004, 2025 WL 2985256, *4 (D.N.J. Oct. 23, 2025); *Briceno Solano v. Mason*, No. 2:26-cv-00045, 2026 WL 311624, *20 (S.D. W. Va. Feb. 4, 2026); *Tinajero Rodriguez v. Mason, et al.*, No. 2:26-cv-00122, 2026 WL 510426, *2 (S.D. W. Va. Feb. 24, 2026); *Chavez Ochoa & Nunez Lopez v. Mason,* No. 2:26-cv-00130, 2026 WL 541144, *2 (S.D. W. Va. Feb. 26, 2026); *Sanchez v. Noem*, No. CV 3:26-0067, 2026 WL 483475, *4 (S.D. W. Va. Feb. 20, 2026); *Dominguez Izaguirre v. Mason*, No. 2:26-cv-00121, 2026 WL 561235, *7 (S.D. W. Va. Feb. 27, 2026); *Urquilla-Ramos v. Trump*, No. 2:26-cv-00066, 2026 WL 475069, *18 (S.D. W. Va. Feb. 19, 2026); *Coalition for Humane Immigrant Rights v. Noem,* 805 F. Supp. 3d 48, 64 (D.C. Cir. Aug. 1, 2025).

[38] For relatively current summaries of cases, *see* Kyle Cheney, Even Trump's own appointees are ruling against ICE's mass detention strategy, Politico, Feb. 12, 2026, and Kyle Cheney & Jessie Blaeser, Explore the data: More than 13,600 rulings against Trump in Ice cases, Politico, June 16, 2026.

[39] *Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025); *Lopez-Campos v. Raycraft*, 2026 WL 158198 (6th Cir. 2026); *Buenrostro-Mendez v Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Hernandez Alvarez v. Warden*, *Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *Quiroz v. Mullen*, 2026 WL 1876709 (10th Cir. June 30, 2026).

The parties agree that Mr. Torres-Moreno's arrest and detention are governed by 8 U.S.C. § 1226(a).[40] After thorough review of the parties' memoranda, the applicable statutes,[41] case law,[42] and applicable federal regulations,[43] two central legal issues emerge: (1) whether Respondents have demonstrated the "strong special justification" required to arrest and detain Mr. Torres-Moreno; and, (2) whether due process requires that Mr. Torres-Moreno be released or, at a minimum, provided a meaningful custody determination hearing before a neutral decisionmaker. Each issue is addressed in turn.

### 3.1 Respondents Have Not Established A "Strong Special Justification" for Detaining Mr. Torres-Moreno

In *Santillan Quiroz v. Mullin*, the Tenth Circuit, relying on United States Supreme Court's decision *Zadvydas v. Davis*, explained: "If the detention is civil and nonpunitive, like the immigration detention here, that reason [for detention] must rise to the level of a 'strong special justification.'"[44] "Due process requires that, whenever the Government detains somebody, it must have a good reason for doing so."[45] "The Due Process Clause of the Constitution forbids the Government from 'depriv[ing]" any "person ... of life, liberty, or property, without due process of law.'"[46]

The question presented then is not whether 8 U.S.C. § 1226(a) permits ICE to detain a removable noncitizen. It does. Rather, the question becomes whether Respondents have

[40] Petition at 1, ¶ 3; Response at 2; *see also* Reply at 2.

[41] 28 U.S.C. § 2241; 8 U.S.C. § 1226(a).

[42] *Santillan Quiroz v. Mullin*, 180 F.4th 1226; *Zadvydas v. Davis*, 533 U.S. 678.

[43] 8 C.F.R. § 245.1; 8 C.F.R. § 236.1; 8 C.F.R. § 1236.1.

[44] *Santillan Quiroz*, 180 F.4th at 1249 (citing *Zadvydas*, 533 U.S. at 689).

[45] *Id.* (quoting *Zadvydas*, 533 U.S. at 689).

[46] *Id.* (quoting U.S. Const. amend. V.).

demonstrated a "strong special justification" for doing so.[47] Under *Santillan Quiroz*, a noncitizen who has entered and is detained in the interior is subject to § 1226(a), rather than the mandatory-detention provision in § 1225(b)(2)(A), and is therefore entitled to release or an individualized bond hearing.[48]

The Petition argues that "[i]mmediate release is particularly appropriate because nothing presently before the Court supplies an independent justification for Petitioner's continued incarceration."[49] In Response, Respondents' justification for Mr. Torres-Moreno's arrest "appears to have been prevention of flight of risk of a removable alien—and in this case, a removable alien with no dependents, whose date of entry and place of employment could not be substantiated by arresting authorities . . . ."[50] The Response does not cite to any record support for this justification, and the I-200 Warrant and USCIS notices sent to Mr. Torres-Moreno contradict this statement.[51] The I-200 warrant does not include any language related to his flight risk; instead the warrant marks two boxes related to Mr. Torres-Moreno's immigration status and removability.[52] The USCIS sent notices approving the I-130 petitions filed on behalf of Mr. Torres-Moreno based on his qualifying relationship with his U.S. citizen daughter.[53] The DHS Record also indicates that Mr. Torres-Moreno is employed and his "Type of Employment" is filled in as: "Operators, Fabricators, and Laborers."[54]

---

[47] *Id.* (quoting *Zadvyda*, 533 U.S. at 689).

[48] *Id.* at 1251, n.13.

[49] Petition at 30, ¶ 116.

[50] Response at 8.

[51] *See id.*

[52] I-200.

[53] DHS Record at 1; USCIS I-485 Application; 2024 USCIS Approval Notice.

[54] DHS Record at 1.

Respondents' assertion that Mr. Torres-Moreno is removable does not, standing alone, justify his continued physical detention. That distinction is consistent with *Santillan Quiroz*, where the Tenth Circuit explained that, although individualized findings are not always necessary to justify immigration detention, categorical detention may be constitutionally sufficient where it rests on a categorical or legislative determination that detention is necessary.[55] Citing *Demore v. Kim*, the court explained that the Supreme Court upheld mandatory detention under § 1226(c) because Congress had made specific findings that the defined class of noncitizens subject to that provision presented heightened risks of recidivism and flight.[56] Unlike *Demore*, where Congress made specific findings that the defined class subject to § 1226(c) presented heightened risks of recidivism and flight, Congress has made no comparable categorical finding that every removable or unadmitted noncitizen presents such risks.[57]

Thus, Respondents must identify a justification for Mr. Torres-Moreno's continued detention independent of his mere removability. On this record, they have failed to do so. Respondents have identified no individualized or categorical findings that Mr. Torres-Moreno poses a danger to the community, presents a risk of flight, or otherwise requires continued physical detention. Accordingly, his continued detention violates due process, and he should be immediately released.

### 3.2 Mr. Torres-Moreno's Liberty Interests Have Been Violated

Mr. Torres-Moreno claims his detention without a bond hearing violates his procedural due process rights.[58] Respondents maintain that his detention was proper from the outset because

---

[55] *Santillan Quiroz*, 180 F.4th at 1249–50 (citing *Demore v. Kim*, *538* U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). ).

[56] *Id.* at 1250.

[57] *Id.*

[58] Petition at 54–56.

he appeared to be a flight risk.[59] Again, this is not supported by DHS's I-200 Warrant or the narrative included in his DHS Record.[60] The "essence of due process is the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.'"[61] As discussed above, Respondents have not addressed, provided, or pointed to anything in his immigration record to justify Mr. Torres-Moreno's detention. Respondents also do not address what documents or evidence support that Mr. Torres-Moreno's removability while he has a pending application for adjustment of status under 8 U.S.C. § 1255.

The Tenth Circuit applies the "three distinct factors" established by the Supreme Court in *Mathews v. Eldridge*[62] "necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution."[63] To determine what process is due, courts consider three factors: "(1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest."[64]

### 3.2.1 The Private Interest Affected

First, Mr. Torres-Moreno has a clear interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."[65] Noncitizen detainees have liberty interests affected by the application of 8 U.S.C. § 1226. Some liberty interests other

---

[59] Reply at 8.

[60] Response at 8; *see also* I-200 Warrant; DHS Record at 2.

[61] *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (1951) (Frankfurter, J., concurring)).

[62] *Id.*

[63] *Hattrup v. United States*, 845 F. App'x 733, 737 (10th Cir. 2021); *United States v. Muhtorov*, 20 F.4th 558, 623 (10th Cir. 2021); *see also Mathews v. Eldridge*, 424 U.S. 319.

[64] *Mathews*, 424 U.S. 319; *see also Martinez*, No. 1:25-CV-1826 TLN CKD P, 2026 WL 121221, at *3 (E.D. Cal. January 16, 2026).

[65] *Zadvydas*, 533 U.S. at 690; *see also Santillan Quiroz v. Mullin*, 180 F.4th at 1249.

courts have identified include: due process procedural protections;[66] "reliance interests;"[67] "continued freedom from civil immigration confinement[;]"[68] and "the most significant liberty interest there is—the interest in being free from imprisonment."[69]

For over three decades Mr. Torres-Moreno was free from custody, working and supporting his family.[70] Respondents were aware, through USCIS notices and contact, that Mr. Torres-Moreno was living freely and they had his address on file.[71] Mr. Torres-Moreno was never granted parole or otherwise conditionally released from immigration custody; rather, he lived freely in the United States for decades.[72]

Mr. Torres-Moreno's present deprivation of his physical liberty implicates a protected liberty interest requiring constitutional justification and adequate process. Mr. Torres-Moreno's liberty interests are elevated and underscored by the duration of his liberty; his ongoing Adjustment Application; Respondents' failure to demonstrate a "strong special justification" for his detention; and the previous ongoing USCIS application process (including, but not limited to, biometrics appointments).[73] Thus, Mr. Torres-Moreno has a clear interest in remaining free from detention.

---

[66] *Aceros*, 2025 WL 2637503 at *8; *Briceno Solano v. Mason*, 2026 WL 311624 at *14.

[67] *Aceros*, 2025 WL 2637503 at *8 (quoting Memorandum from Benjamine Huffman, Acting Sec'y of Homeland Sec., to U.S. Immigr. & Customs Enf't et al., *Guidance Regarding How to Exercise Enforcement Discretion* (January 23, 2025) (recognizing that noncitizens granted parole have "reliance interests")).

[68] *Lopez Benitez*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025).

[69] *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395 (S.D.N.Y. 2025).

[70] *See* Petition at 1, ¶ 16; *see also* Reply at 9.

[71] USCIS I-485 Application; 2024 USCIS Approval Notice.

[72] Petition at 1; *see also* Reply at 9.

[73] *Uzcategui v. Brooksby*, No. 4:26-CV-00020-DN-PK, 2026 WL 622751, at *10 (D. Utah Mar. 5, 2026) (citing *Martinez*, 2026 WL 121221, at *3 (discussing the liberty interests associated with 1226(a) and release on parole)).

### 3.2.2 The Risk of Erroneous Deprivation

The second *Mathews* factor also weighs in Mr. Torres-Moreno's favor. Civil immigration detention, which is "nonpunitive in purpose and effect" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.[74] Respondents do not contend that Mr. Torres-Moreno is or was a flight risk or a danger to the community. And nothing in the record suggests that he is a flight risk or danger to the community. Therefore, the risk of erroneous deprivation of Mr. Torres-Moreno's rights is significant.

### 3.2.3 The Government's Interest

Regarding the last *Mathews* factor, the government clearly has an interest in enforcing immigration laws, but Respondents' interest in detaining Mr. Torres-Moreno without any justifiable reasonable explanation for his detention is "low."[75] Thus, there is no apparent governmental interest favoring Mr. Torres-Moreno's continued detention without special justification.

Mr. Torres-Moreno's decades-long freedom created a reasonable expectation that he would be entitled to retain his liberty so long as he was not a flight risk; presented himself at any hearings for which he was given notice; and did not pose a danger to the community.[76] Respondents have not identified any s in which detention was based on Mr. Torres-Moreno's flight risk. His liberty interests were violated by his August 10, 2026, arrest and subsequent detention without due process.

---

[74] *Zadvydas*, 533 U.S. at 690.

[75] *See* *Uzcategui*, 2026 WL 622751, at *10 (citing *Martinez*, 2026 WL 121221, at *3 (discussing the liberty interests associated with 1226(a) and release on parole)).

[76] *See* *Martinez*, 2026 WL 121221, at *3*; see* *Zadvydas*, 533 U.S. at 690; *see also* *Morrissey,* 408 U.S. at 479 (discussing the expectation of liberty if the conditions of release are followed).

### 3.3 Respondents Have No Authority to Continue Detaining Mr. Torres-Moreno

Respondents may not continue Mr. Torres-Moreno's detention under 8 U.S.C. § 1226(a). Upon finding a constitutional violation, a district court may grant a writ of habeas corpus and "dispose of the matter as law and justice so require."[77] Release from detention is the "typical remedy" for "unlawful executive detention."[78]

Petitions involving detainees challenging their detention under 8 U.S.C. § 1226 allows for release or a bond hearing.[79] At this time, "a bond hearing would not remedy the core constitutional violation at issue here,"[80] Mr. Torres-Moreno's detention was unlawful from its inception because Respondents detained without a supported strong special justification. "In this situation a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity [for] relief because the detention without adequate pre-deprivation procedures has already been carried out."[81]

Even if a bond hearing before an immigration judge were ordered, such relief would be futile. Currently, immigration officers and judges believe they are bound by erroneous administrative guidance and by an erroneous BIA decision to not offer release on bond.[82] On September 6, 2025, the BIA, concurring with the DHS position, held that "[b]ased on the plain language of section 235(b)(2)(A) of the INA, Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."[83]

---

[77] 28 U.S.C. §§ 2241(a), 2243.

[78] *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

[79] *Santillan Quiroz v. Mullin*, 180 F.4th at 1251, n.13.

[80] *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 319.

[81] *Id.* at 319–20.

[82] *Barco Mercado v. Francis*, No. 25-cv-6582, at 31–32, 817 F.Supp.3d 487, 499-500 (quoting *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 216 (B.I.A. 2025).).

[83] *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 216.

Immediate release is the only appropriate remedy. Respondents are ordered to release Mr. Torres-Moreno immediately. Any attempt to re-detain Mr. Torres-Moreno must be supported by a valid statutory authority and any applicable procedural protection, including a showing of materially changed circumstances where required by law.[84]

## 4 ORDER

IT IS HEREBY ORDERED THAT Mr. Torres-Moreno's Petition for Writ of Habeas Corpus[85] is GRANTED.

IT IS FURTHER ORDERED:

1. Respondents must immediately release Mr. Torres-Moreno.

2. Within 4 business hours of the issuance of this order, and every four business hours thereafter, Respondents must file a report on the status of their compliance with this order to release Mr. Torres-Moreno.

3. Respondents must reinstate Mr. Torres-Moreno's Adjustment Application and any associated appointments or hearing dates and file a copy of that notice with this court.

4. Respondents must not again attempt to use 8 U.S.C. § 1226 to detain Mr. Torres-Moreno without justification during the pendency of his Adjustment Application.

5. Any request by Mr. Torres-Moreno to recover fees or costs must be made by motion.

Signed August 31, 2026.

BY THE COURT

David Nuffer
United States District Judge

[84] *See* 8 C.F.R. § 1003.19(e); 8 U.S.C. § 1226(a).

[85] Petition for Writ of Habeas Corpus, docket no. 1, filed August 12, 2026.